IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | § | Case No. 11-42230-705 |
| | § | |
| Lawanda Watson, | § | Chapter 7 |
| | § | |
| Debtor. | § | [Docket No. 29] |

## ORDER DENYING DELLAMANO'S MOTION TO RECONSIDER

At 10:22 A.M. on December 29, 2015, the Court entered a Contempt of Court Order [Docket No. 28] against James C. Robinson, Dean D. Meriwether and Robert J. Dellamano (the "Respondent-Attorneys")—each of whom is an attorney affiliated with the Critique Services Business and all of whom currently are suspended from the privilege of practicing before this Court for various acts of professional malfeasance while affiliated with the Critique Services Business. The Court held each of the Respondent-Attorneys in contempt of court for having failed to make Court-ordered disclosures related to a falsified Court document created at and used by their office. At 2:44 P.M. on December 29, 2015, Dellamano filed an untimely response (the "Response") [Docket No. 29]. The Court construes the Response to be a request to reconsider the Contempt of Court Order. The Court now orders that the request to reconsider the Contempt of Court Order be denied.

## I. FACTS

All Background and Facts set forth in the Contempt of Court Order are hereby incorporated into this Order. All capitalized terms herein have the same meaning as such capitalized terms are given in the Contempt of Court Order.

To summarize: On September 25, 2015, someone at the Critique Services Business created a dummied-up Court document—meant to look like an Amended Schedule F that had actually been filed in the Case—and faxed the falsified document to the Debtor's employer, in an effort to stop a garnishment. The fax cover sheet represented that the fax was sent by "Attorneys at Law," without naming any particular firm or attorney, and stated that some unnamed "we" represented the Debtor. The fax cover sheet also included certain false

1

statements. All of this came to the attention of the Court on a Motion for Clarification, which was filed by the chapter 7 trustee on December 10, 2015 [Docket No. 23]. On December 17, 2015, the Court entered an Order (the "December 17 Order"), granting the Motion for Clarification [Docket No. 25] and confirming that the Amended Schedule F had not been filed and was not a representation of the Debtor. In the December 17 Order, the Court also directed that Robinson, Meriwether, and Dellamano each file a disclosure in which he (a) identify, by full name, the person who prepared and sent the fax; (b) identify the attorney who was responsible for managing the activities of the person who sent the fax, if that person was not himself an attorney; (c) identify who employed or independently contracted with the person who sent the fax, if that person was not himself an attorney; and (d) identify which attorney, specifically, was purported in the fax to be representing the Debtor in making this stop-garnishment demand. The Court ordered that the disclosures be made by December 23, 2015. The Respondent-Attorneys did not file the disclosures. Accordingly, on December 29, 2015, the Court entered the Contempt of Court Order, in which the Court directed that the contempt committed by Robinson, Meriwether, and Dellamano be made part of the record of the Court, to be considered upon any request for reinstatement to the privilege of practicing before this Court that may be made in the future by Robinson, Meriwether or Dellamano.

## II. ANALYSIS

### A. Dellamano's Substantively Insufficient Response

In his Response, Dellamano states, "he had no knowledge prior to this Order of Debtor, Debtor's case filings, Debtor's pleadings, Debtor's faxes, nor [sic] Debtor's amendments." This is not responsive to the Court's directives. Dellamano was not directed to confirm his ignorance; he was directed to *identify the persons* at his three-attorney business who were involved with the making and use of the falsified Amended Schedule F. This was simple: identify who created the falsified Court document and who sent the fax in which it was represented that the stop-garnishment demand was being made by "Attorney**s** at

2

Law" (which well could be construed to include Dellamano). There is no suggestion that Dellamano even made an effort to obtain this information.

### B. Dellamano's Claim that He Did Not Receive the December 17 Order Until December 29, 2015

Dellamano claims that he did not receive the December 17 Order until December 29, 2015—presumably to explain the untimeliness of his Response. He states that, "the [December 17 Order] was received via U.S. Mail on December 29, 2015 at 3919 Washington St. Louis Mo, 63108, after the response date."  However, domestic delivery of an undamaged, clearly addressed envelope by first-class U.S. Postal Service does not take twelve days—or anywhere close to that.  Dellamano's claim the December 17 Order was not delivered (his word, "received") until December 29, 2015—coincidentally, just after the Contempt of Court Order was issued—has no credibility.

### C. Dellamano's Suggestion that He Did Not Have Actual Knowledge of the December 17 Order Until December 29, 2015

Dellamano appears to suggest that he did not have actual knowledge of the December 17 Order until December 29, 2015.  However, even if there had been an inexplicable failure of delivery by the postman of Dellamano's copy of the December 17 Order, two other copies of the December 17 Order were mailed to the Critique Services Business Office—and there is no allegation that these other copies were not delivered.  It strains all credibility to believe that in this three-attorney business, where all three attorneys are named as respondents, no one would have brought up this matter with Dellamano when two copies of the December 17 Order arrived in the mail. In addition, an electronic copy of the order was emailed to MyECF.CritiqueServices@gmail.com on December 17, 2015. It is not believable that the emailed copy of the December 17 Order would not have been passed along quickly to each of the Respondent-Attorneys.  As such, any suggestion that Dellamano did not have actual knowledge of the December 17 Order until December 29, 2015 has no credibility.

3

### D. Dellamano's Assertion that the December 17 Order Was Not Mailed to His Correct Address

The Court mailed a copy of the December 17 Order to Dellamano at 3919 Washington Blvd., St. Louis, Missouri 63108—the address of the Critique Services Business Office.  This is the address that Dellamano gave the Court on December 10, 2015 as his address, when he applied for a passcode to use the Court's online docketing system ("CM-ECF").

Dellamano, however, states that the December 17 Order "was not sent to [his] address of record."   He claims that his address of record with the Court on December 17, 2015 was 100 S. 4th St., St. Louis, Missouri 63102 (the "Deloitte Building").  This claim is deliberately misleading.  While Dellamano gave the Deloitte Building as his address of record with the Court on December 16, 2015, ***this was a false representation of his address at the time that it was made— as Dellamano is well-aware.***  Dellamano had no mailing address at the Deloitte Building as of December 16, 2015.  Nor did he have a mailing address at the Deloitte Building as of December 17, 2015.  He did not obtain a mailing address at the Deloitte Building until December 18, 2015—as set forth in detail in the Final Order for Suspension entered against Dellamano in Case No. 15-0402, and as summarized below.

On December 16, 2015, Dellamano filed numerous notices of appearance in chapter 13 cases. In each notice of appearance, he stated that his address was the Deloitte Building. However, when the Court attempted to confirm this new address, the Court discovered that Dellamano was not located in any capacity at the Deloitte Building. Accordingly, on December 17, 2015, the Court issued an order in Case No. 15-0402, directing Dellamano to provide a copy of his leasing agreement for the Deloitte Building, to establish that, as of December 16, 2015, he had a mailing address there.  The Court provided that the failure to provide such documentation would result in suspension. Dellamano then scrambled and executed a leasing agreement for a mailbox at the Deloitte Building on December 18, 2015.  This December 18, 2015-executed leasing agreement had a backdated "start date" of December 15, 2015.  However,

4

backdating a lease start date does not re-write history. When Dellamano represented, *on December 16, 2015*, that he had a mailing address at the Deloitte Building, he made a false statement. He had no mailing address at the Deloitte Building on December 16, 2015, and he had no reason to believe otherwise. As of December 16, 2015, Dellamano had not paid for a lease and he had no lease agreement for the Deloitte Building. Dellamano did not have a lease agreement for the Deloitte Building until December 18, 2015.

As such, on December 17, 2015, the Court had the order in this Case mailed to the only non-phony, non-false address that it had for Dellamano: the 3919 Washington Blvd. address. This is the address of Dellamano's physical place of business—the place where he keeps his office, has administrative staff, and receives clients. It was entirely appropriate that the Court send Dellamano correspondence there, since it had no other good address for him. And the Court was under no obligation to send Dellamano correspondence at a mailbox address that was not his address at the time of the mailing.

### III.  ADMONITION TO DELLAMANO

The past twenty days have been an unmitigated disaster for Dellamano:

- On December 10, Dellamano attempted to obtain a CM-ECF passcode by using Meriwether's business address and telephone number. This was in violation of the December 7 order suspending Meriwether, in which the Court prohibited any other attorney from using Meriwether's business address and telephone number as his own address and telephone number in Court records during Meriwether's suspension—a step taken to ensure that, during Meriwether's suspension, no attorney would "ghost-lawyer" for Meriwether or further perpetuate the unauthorized practice of law in which Meriwether had been participating at the Critique Services Business.

- On December 11, the Court opened an administrative proceeding against Dellamano, Case No. 15-0402 (the "Miscellaneous Case"), and suspended his CM-ECF passcode until he made certain disclosures about his relationship with Meriwether and the Critique Services Business.

5

- On December 16, Dellamano made false representations to the Court in numerous notices of appearance filed in chapter 13 cases, regarding his business address—false representations that were made to avoid being candid with the Court about his connection to Meriwether and the Critique Services Business.

- On December 17, in the chapter 7 case of *In re Toni L. Davenport* (Case No. 15-49067), Dellamano filed a notice of appearance in which he the same false representation about his address that he had made the previous day in the chapter 13 cases.

- On December 17, the Court issued an order in the Miscellaneous Case, directing that file a copy of his Deloitte Building leasing agreement to establish his mailing address as of December 16 or face suspension.

- On December 17, the Court issue its order in this matter, *In re Watson*, directing Dellamano, along with Robinson and Meriwether, to identify the persons at the Critique Services Business who were responsible for the creation and use of the falsified Amended Schedule F.

- On December 18, at the § 341 meeting in *In re Jessica White*, it appeared to the chapter 7 trustee that Dellamano admitted to making materially false statements in filings with the Court. This resulted the trustee filing a notice of false statements with the Court.

- On December 18, Dellamano filed in the Miscellaneous Case a copy of a leasing agreement that established that he had made false statements to the Court regarding his address as of December 16, 2015.

- On December 18, 2015, Dellamano demanded that the Court make Rule V referral (*against him*) to Rule X special counsel for an investigation and prosecution of a formal disciplinary proceeding. The Court denied the demand—not because Dellamano had not acted sanctionably, but because there was no need for referral to Rule X special counsel for an investigation to determine that Dellamano had acted sanctionably.

6

- On December 18, the Court issued a Notice of Suspension in the Miscellaneous Case, giving notice that it was suspending Dellamano from the privilege of practicing before the Court until March 7, 2016.
- On December 21, the Court issued a Final Order of Suspension in the Miscellaneous Case, suspending Dellamano on a final basis until March 7, 2016, with the stipulation that Dellamano could be reinstated immediately upon the making of certain disclosures regarding his business.
- On December 21, the Court denied Dellamano's demand for a "transfer" of the Miscellaneous Case to the U.S. District Court, as such demand was meritless under the applicable case law, statutes, and local rules.
- On December 22, another judge of this Court denied a motion filed in *In re Clarence and Lettie Morris* (Case No. 14-48332), in which Dellamano asked the other judge to declare his suspension order to be unenforceable. The other judge specifically ruled that the suspension order will stand.
- On December 22, the chapter 7 trustee in *In re Jessica White* filed a "Notice of False and/or Misleading Statements in Docket Entries Nos. 9 and 10" related to Dellamano's admissions at the § 341 meeting on December 18.
- On December 23, the Court issued an order in *In re Jessica White*, directing that Dellamano show cause why sanctions should not be imposed, against him, pursuant to Fed. R. Bankr. P. 9011, § 105(a), and the inherent authority of the Court to discipline attorneys it, for the filing materially false or misleading documents with the Court.
- On December 29, the Court issued the Contempt of Court Order in this Case, finding Dellamano in contempt for having failed to respond to the Court's directives in its December 17 Order.
- On December 30, the Court issued an Order for Disgorgement in *In re Davenport*, directing that Dellamano disgorge to the Debtor any fees he was paid because the value of any services he "rendered" was $0.

Moreover, since July 2015, certain chapter 7 trustees have expressed concerns about the fact that Dellamano—who holds no Missouri license, had not been admitted to practice in this District,[1] and had not filed a notice of appearance or a required Rule 2016(b) disclosure in any case—had been representing Meriwether's clients at § 341 meetings. Dellamano's participation in § 341 meetings placed the trustees (who run the § 341 meetings) in an untenable professional situation. The trustees were being presented with a conflict between the attorney of record and the attorney appearing at the § 341 meeting—and, to make matters worse, the attorney appearing at the § 341 meeting was not even admitted to practice in this District. This was an inauspicious entry for Dellamano into the bankruptcy practice in this District. And, as detailed above, it only went downhill from there, once Dellamano started appearing in cases.

Dellamano has chosen to be involved with the highly disreputable Critique Services Business. As the Court has already set forth in previous orders, the Critique Services Business is owned by Beverly Holmes Diltz, a non-attorney with a notorious history of the unauthorized practice of law and numerous federal court injunctions under her belt. The Critique Services Business does not help the poor for a reasonable fee; it exploits the poor by taking their money and failing to render legal services. The disbarment and suspension histories of almost every attorney who has ever worked at the Critique Services Business should send any attorney running for the hills, away from Diltz and her business. The Critique Services Business grinds up attorneys, one by one, then replaces them when they are disbarred and suspended, and the cycle repeats—with Diltz suffering no real consequences personally, since she has no law license to lose.

The consequences of Dellamano's decision to become involved with the Critique Services Business are already being realized. Dellamano needs to right this ship immediately and steer it away from the looming rocks of disciplinary disaster, toward which he appears to be barreling at full-steam. The Court welcomes Dellamano practicing bankruptcy law here following his suspension, provided that he does so lawfully and honestly. However, the unauthorized

---

[1] Dellamano was not admitted to practice in this District until October 9, 2015.

practice of law that has been the basis of the Critique Services Business for so many years is over.  It will not be tolerated any further—and an attorney caught facilitating these practices at the Critique Services Business will be held to account.  It is the Court's recommendation to Dellamano that he use his suspension to consider how he plans to do business before this Court, and commit to practicing here honestly and in compliance with all rules, procedures, and Court orders.

## IV.  CONCLUSION

To the degree that Dellamano seeks reconsideration, the Court **ORDERS** that such request be **DENIED**.  The Contempt of Court Order stands.

DATED:  December 30, 2015
St. Louis, Missouri 63102
msr

CHARLES E. RENDLEN,
U.S. Bankruptcy Judge

**COPIES TO:**

Robert J. Dellamano
Critique Services
3919 Washington Blvd.
St. Louis, MO   63108

Robert J. Dellamano
Attorney at Law
100 S. 4th St., Ste. 550
St. Louis, MO 63102

James C. Robinson
Critique Services
3919 Washington Blvd.
St. Louis, MO   63108

Dean D. Meriwether
Critique Services
3919 Washington Blvd.
St. Louis, MO   63108